## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| Christopher Lee Lavezzo, | : |
| | : |
| Plaintiff, | : Civil Action No. |
| | : |
| v. | : |
| | : |
| Equifax Information Services, LLC, | : |
| Trans Union, LLC, Experian | : |
| Information Solutions, Inc., and I.C. | : |
| System, Inc., | : |
| | : |
| Defendants. | : |
| | : |

### COMPLAINT

### Preliminary Statement

1.      This is an action for damages brought by an individual consumer against the Defendants (named below) for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA") and for violations of the Fair Debt Collections Practices Act, 15 USC §§ 1692 *et seq.* (the "FDCPA") as to I.C. System, Inc., ("ICS") only.

### Jurisdiction and Venue

2.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p, and 28 U.S.C. §1331, 1337.

3.      Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

### Parties

4.      Plaintiff Christopher Lee Lavezzo ("Mr. Lavezzo" or "Plaintiff") is an adult individual who resides in Providence, NC.

5.      Defendant Trans Union, LLC ("Trans Union") is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the

Eastern District of Pennsylvania, with a principal place of business located at 1510 Chester Pike, Crum Lynne, PA 19022.

6.      Defendant Experian Information Solutions, Inc ("Experian") is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania, with principal place of business located at 701 Experian Pkwy, Allen, TX 75013.

7.      Defendant Equifax Information Services, LLC ("Equifax") is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania, with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, GA 30309. At times Trans Union, Experian and Equifax are collectively referred to as the "Credit Reporting Agency Defendants" or the "CRA Defendants".

8.      Defendant ICS is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania, with a principal place of business located at 444 Highway 96 East, St. Paul, MN 55127.

9.      ICS is a "furnisher" as defined in 12 CFR 1022.41 as it regularly provides information relating to consumers to one or more Consumer Reporting Agencies ("CRAs") for inclusion in a consumer report.

10.     ICS is also a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

**Facts**

**Purpose of the FCRA**

11.     Understanding the dire consequences of inaccurate credit reporting, Congress enacted the FCRA.  One of the primary purposes of the FCRA is to require CRAs to assure

2

"maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

12.    The preservation of one's good name and reputation is also a foundational principle of the FCRA:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)].

13.    Thus, in order to further its objectives, embedded within the FCRA is the requirement that CRAs conduct a reasonable investigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted.

3

14.    Further underscoring the importance of accurate credit reporting, the FCRA also requires furnishers of information - a creditor or other third party that provides information about consumer to a CRA - upon notice, to conduct a reasonable investigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

15.    Here, despite Mr. Lavezzo's numerous disputes, none of the Defendants conducted reasonable investigations of the inaccurate reporting of Plaintiff's credit information and continued to include derogatory inaccurate information within his credit reports.

### Purpose of the FDCPA

16.    Prior to the enactment of the FDCPA, Congress discovered "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a)

17.    Congress found that these "practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

18.    For these reasons, Congress took action, and in 1977 enacted the FDCPA:

> to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

Douglass v. Convergent Outsourcing, 765 F.3d 299, 301-02 (3d Cir. 2014) (quoting 15 U.S.C. § 1692(e))

19.    The FDCPA prohibits, among other things, falsely representing the amount, character or legal status of a debt, 15 U.S.C. 1692e(2)(A); communicating to any person credit

information which is known or should be known to be false, failing to communicate that a disputed debt is disputed, 15 U.S.C. 1692e(8); or using false, deceptive misleading and unfair or unconscionable means to collect or attempt to collect a debt from Plaintiff, 15 U.S.C. 1692(f).

20.     Accordingly, the FDCPA provides consumers with a private right of action against debt collectors like ICS, that fail to comply with their statutory obligations.

## Facts

## Background

## The Defendants' Failure to Properly Report Mr. Lavezzo's ICS Account

21.     On or about February 23, 2026, Mr. Lavezzo received notification from ICS that it was collecting a debt of $331.98 on behalf of the original creditor Charter Communications/Spectrum ("Spectrum").

22.     That same day Mr. Lavezzo made a payment directly to Spectrum for the full amount of $331.98. Spectrum provided Mr. Lavezzo with a letter confirming that the "account has been paid in full and no further monies are due and owing on this debt."

23.     Despite the account being paid in full without any further amount being owed, Mr. Lavezzo's ICS account continued to be reported inaccurately by the Defendants. All three CRA Defendants were reporting the ICS account inaccurately in different ways.

24.     Trans Union was reporting that the ICS account was open and settled for less than the full amount.

25.     Experian and Equifax were reporting the ICS account as unpaid with a $331 balance.

26.     Mr. Lavezzo disputed this inaccurate information with Trans Union, Experian and Equifax and asked for the inaccurate information to be corrected on his credit reports.

5

27.    As a part of Mr. Lavezzo's disputes, he included a letter from Spectrum confirming that the account was paid in full.

28.    Trans Union removed the "settled for less than the full amount" inaccuracy and updated Mr. Lavezzo's credit report.  However, Trans Union did not correct the reporting from open to closed for the account.  Trans Union then reinserted the inaccurate information without providing prior notification in violation of the FCRA.

29.    Experian did not remove the inaccurate information pursuant to Mr. Lavezzo's disputes.  However, sometime after Experian claimed to have verified the disputed information as accurate, it was later removed.

30.    Equifax did not initially remove the inaccurate information pursuant to Mr. Lavezzo's disputes.  However, sometime after Equifax claimed to have verified the disputed information as accurate, it was later removed.  Equifax then reinserted the inaccurate information without providing prior notification in violation of the FCRA.

## Mr. Lavezzo's Disputes with Trans Union

31.    In or about February 2026, Mr. Lavezzo disputed the inaccurate reporting with Trans Union. The dispute included a detailed explanation as to why the information being reported was inaccurate, false and misleading. The dispute also included a letter from Spectrum confirming that the account was paid in full and that there is no outstanding balance.

32.    Pursuant to the obligations under the FCRA, Trans Union was supposed to provide the dispute to ICS to investigate.

33.    By correspondence dated February 25, 2026, Trans Union responded by removing the remark section from Plaintiff's report that stated that the balance was settled for less than the full balance. Trans Union did not, however, report the account as closed.

34. On or about March 24, 2026, Trans Union reinserted the remark relating to the account being settled for less than the full balance.

35. Trans Union never provided Mr. Lavezzo with any notification that it was reinserting the removed information.

36. Mr. Lavezzo takes significant pride in his credit, and was distraught, confused and upset by Trans Union reinserting account information that was inaccurate, false and misleading despite the documentation he submitted to Trans Union previously.

## Mr. Lavezzo's Disputes with Experian

37. On or about March 19, 2026, Mr. Lavezzo disputed the inaccurate reporting with Experian. The dispute included a detailed explanation as to why the information being reported was inaccurate, false and misleading. The dispute also included: (i) a letter from Spectrum confirming that the account was paid in full and that there was no outstanding balance; and (ii) a screenshot of Mr. Lavezzo's Trans Union report showing a $0 balance.

38. Pursuant to the obligations under the FCRA, Experian was supposed to provide the dispute to ICS to investigate.

39. By correspondence dated March 24, 2026, Experian responded by claiming that the inaccurately reported ICS account was verified as accurate and the inaccurate credit reporting continued.

40. Mr. Lavezzo takes significant pride in his credit, and was distraught, confused and upset by the failure of Experian to remove the inaccurate credit information included within his credit report, pursuant to his first dispute, despite the documentation he submitted.

41. On or about April 1, 2026, Experian later removed the ICS account from Mr. Lavezzo's credit report.

**Mr. Lavezzo's Disputes with Equifax**

42.     On or about February 25, 2026, Mr. Lavezzo disputed the inaccurate reporting with Equifax. The dispute included a detailed explanation as to why the information being reported was inaccurate, false and misleading.  The dispute also included: (i) a letter from Spectrum confirming that the account was paid in full and that there was no outstanding balance; and (ii) a screenshot of Mr. Lavezzo's Trans Union report showing a $0 balance.

43.     Pursuant to its obligations under the FCRA, Equifax was supposed to provide the dispute to ICS to investigate.

44.     By correspondence dated March 6, 2026, Equifax responded by claiming that the inaccurately reported ICS account was verified as accurate and the inaccurate credit reporting continued.

45.     On or about March 6, 2026, Mr. Lavezzo again disputed the inaccurate reporting with Equifax. The dispute included a detailed explanation as to why the information being reported was inaccurate, false and misleading.  The dispute also again included: (i) a letter from Spectrum confirming that the account was paid in full and that there is no outstanding balance; and (ii) a screenshot of Mr. Lavezzo's Trans Union report showing a $0 balance.

46.     By correspondence dated March 18, 2026, Equifax again responded by claiming that the inaccurately reported ICS account was verified as accurate and the inaccurate reporting continued.

47.     On or about March 30, 2026, Equifax removed the ICS account from Mr. Lavezzo's credit report.

48.     On or about March 31, 2026, Equifax then reinserted the ICS account.

49.     Equifax never provided Mr. Lavezzo with any notification that it was reinserting

8

the removed information.

50. Mr. Lavezzo takes significant pride in his credit, and was distraught, confused and upset by the failure of Equifax to remove the inaccurate credit information included within his credit report despite the documentation he submitted and then when it was finally removed, it was later reinserted.

**Defendants' Failure to Conduct Reasonable Investigations**

51. Mr. Lavezzo's disputes triggered obligations under the FCRA for the CRA Defendants (Section 1681i(a)) and ICS (Section 1681s-2(b)) to conduct reasonable investigations.

52. This dual investigative requirement further illustrates and reinforces Congress' findings of the importance of accurate consumer credit reporting. Unfortunately, however, when conducting an 'investigation' CRAs and furnishers choose speed over accuracy.

53. Furnishers merely review information in their limited credit reporting databases, to determine if the disputed information is accurate. CRAs then simply accept as true whatever representation is made by the furnisher without questioning any of the results, or conducting a true independent investigation. Furnishers and CRAs alike often simply ignore documentation provided to them by consumers that are intended to assist in resolving a disputed inaccuracy.

54. In other words, no true investigation is performed by CRAs or furnishers other than a perfunctory data match of information. See e.g., Robertson v. J.C. Penney Co., 2008 WL 623397, at *8 (S.D. Miss. Mar. 4, 2008) ("There appears to have been no investigation of the disputed status of the claim at all"); Scharf v. Trans Union, LLC, 2015 WL 6387501 (E.D. Mich. Oct. 22, 2015), reconsideration denied, 2015 WL 7016331 (E.D. Mich. Nov. 12, 2015) (granting summary judgment to identity theft victim where the furnisher merely reviewed its file to determine whether the loan was in default); Marchisio v. Carrington Mortg. Servs., LLC, 919 F.3d 1288, 1303 (11th

Cir. 2019) ("…Defendant made no correction nor any effort to insure that the pertinent databases revealed the existence of the settlement and the fact that no debt was owed by Plaintiffs. Meaning that when Plaintiffs took the predictable next step of disputing this debt with the credit reporting agencies, the outcome of the investigation by Defendant's employee was also quite predictable: the employee would incorrectly verify the existence of a continuing debt.")

55.     Unfortunately, this situation is no different.

56.     Mr. Lavezzo provided with his disputes all of the information and documentation necessary to confirm that the account was paid in full.  Additionally, any reasonable inquiry into this matter would have further confirmed that the reporting of the credit information was not accurate.

57.     If any reasonable investigation were conducted, and the materials submitted by Mr. Lavezzo were read, the ICS account should have been corrected.

58.     The Defendants either did not engage in any investigation when they were informed of the inaccurate reporting, or (alternatively) did not engage in a reasonable investigation, as such an investigation would have revealed the inaccurate information, which, at minimum, was misleading since Mr. Lavezzo provided documentation directly from the original creditor, Spectrum, confirming that his account was paid in full.

59.     The Defendants failed to institute or adhere to policies and procedures that could have prevented the reporting of the inaccurate information.

60.     The Defendants knew or should have known that their actions violated the FCRA. Additionally, Defendants could have taken the steps necessary to bring their agents' actions within compliance of the statutes but neglected to do so and failed to adequately review those actions to ensure compliance with said laws.

10

61.     Plaintiff's credit reports and file have been obtained from the CRA Defendants and have been reviewed by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving credit offers and opportunities, known and unknown.

62.     As a result of the Defendants' violations of the law, Mr. Lavezzo suffered interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, fear, worry, anxiety, and embarrassment attendant to his disputes and disbelief by Defendants of his assertions.

## Count One – Violations of the FCRA
### Plaintiff v. Experian, Trans Union and Equifax

63.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

64.     At all times pertinent hereto, Experian, Trans Union and Equifax are each a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

65.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

66.     At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

67.     The CRA Defendants have violated numerous provisions of the FCRA for their improper actions, including but not limited to Sections 1681e(b) and 1681i(a) of the FCRA. Defendants willfully and negligently violated the FCRA and are liable for damages to Plaintiff pursuant to Section 1681n and 1681o of the FCRA.

11

68. The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendants are liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

**<ins>Count Two – Violations of the FCRA</ins>**
**Plaintiff v. ICS**

69. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

70. At all times pertinent hereto, ICS was a "person" as that term is defined by 15 U.S.C. § 1681a(b).

71. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

72. ICS violated Section 1681s-2(b) of the FCRA by engaging in the following conduct:

  a. willfully and negligently failing to conduct a reasonable investigation of the inaccurate information that Plaintiff disputed;

  b. willfully and negligently failing to review all relevant information concerning Plaintiff's inaccurately reported trade line;

  c. willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

  d. willfully and negligently failing to report the accurate status of the inaccurate information to all credit reporting agencies;

  e. willfully and negligently continuing to furnish and disseminate inaccurate,

12

unlawful and derogatory credit account and other information concerning Plaintiff to credit reporting agencies and other entities; and

f.   willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(b)

73.   The Defendant has violated numerous provisions of the FCRA for its improper actions, including but not limited to Section 1681s-2(b) of the FCRA.  Defendant willfully and negligently violated the FCRA and is liable for damages to Plaintiff pursuant to Section 1681n and 1681o of the FCRA.

74.   The conduct of ICS was a direct and proximate cause, as well as a substantial factor in bringing about the serious injuries, actual damages and harm to Plaintiff that are outlined more fully above. As a result, Defendant is liable to Plaintiff for the full amount of statutory, actual, and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

<u>**Count Three – Violations of the FDCPA**</u>
**Plaintiff v. ICS**

75.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

76.   ICS is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

77.   Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

78.   The above reporting of inaccurate information to credit reporting agencies by ICS was "communications" relating to "debts" as defined by 15 U.S.C. §§ 1692a(2) and 1692a(5) of the FDCPA.

79.   Any alleged debts at issue arose out of a transaction which was primarily for personal, family or household purposes.

13

80. Transworld violated the FDCPA. ICS's violations include, but are not limited to, violations of:

a. The false representation of the amount, character or legal status of a debt;

b. Communicating or threatening to communicate to any person credit information which is known or which should be known to be false; and

c. Otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt from the Plaintiff.

81. ICS's acts, as described, above were done with intentional willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies relating to the inaccurate/stale information.

82. As a result of the above violations of the FDCPA, ICS is liable to Plaintiff in the sum of Plaintiff's statutory damages, actual damages and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants, based on the following requested relief:

a. Actual damages;

b. Statutory damages;

c. Punitive damages;

d. Costs and reasonable attorneys' fees; and

e. Such other relief as may be necessary, just and proper.

                           **THE KIM LAW FIRM, LLC**

BY:       */s/ Richard H. Kim*
          Richard Kim, Esquire
          1515 Market St., Suite 1200
          Philadelphia, PA 19102
          Ph. 855-996-6342/Fax 855-235-5855
          rkim@thekimlawfirmllc.com

          *Attorney for Plaintiff Christopher Lee Lavezzo*

Date: May 4, 2026